IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VIKRAM CHOPRA, | ) | Case No. 1:04CV1771 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Ann Aldrich |
| | ) | |
| CASE WESTERN RESERVE UNIVERSITY, et al., | ) ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |

This is a civil rights case, in which plaintiff Vikram Chopra ("Chopra"), a former student in the Masters of Science in Anaesthesiology program (the "MSA program") at Case Western Reserve University ("CWRU") seeks relief under 42 U.S.C. § 2000(d) for unlawful discrimination in education, under 42 U.S.C. § 1983 for deprivation of his right to equal protection under the Fourteenth Amendment to the United States Constitution, and under 42 U.S.C. § 1981 for unlawful discrimination on the basis of age and national origin. Chopra's complaint also includes a state law claim of fraudulent misrepresentation. Chopra names as defendants CWRU; Joel Zivot, M.D. ("Zivot"), Medical Director of the MSA program; and Joseph Rafici ("Rafici"), Academic Director of the MSA program (collectively, "CWRU").  Now before the court is a motion for summary judgment under Federal Rule of Civil Procedure 56(c), filed by CWRU (Docket No. 48).  For the following reasons, the court grants this motion and enters judgment in favor of all defendants.

**I. Background**

In February 2003, Chopra submitted his application for the 24-month MSA program at

CWRU. CWRU's program uses a clinically-focused curriculum to train students to become licensed Anaesthesiology Assistants. Such assistants are responsible for administering the appropriate anaesthesia during surgeries. Training in the MSA program involves learning and performing procedures on patients during actual surgeries at various hospitals in the Cleveland area. On March 7, 2003, following an interview conducted by Zivot, Rifici and other faculty instructors, Chopra was conditionally accepted into the MSA program. He accepted admission on March 31, 2003. Chopra's conditional status was lifted after he successfully completed the prerequisite courses necessary for unconditional enrollment, and Chopra officially began the MSA program on June 2, 2003.

During his first two semesters in the program, Chopra's classroom performance was more than adequate. CWRU does not dispute the veracity of the transcript submitted by Chopra, which demonstrates that he compiled a cumulative grade-point average of 3.32 for the Summer and Fall 2003 semesters. However, CWRU does claim that Chopra received frequent unfavorable reviews on his clinical assignments. These assignments required working with an instructor during actual patient surgeries. Chopra apparently made frequent mistakes of life-threatening severity; by the end of his first semester, his clinical performance was ranked last among MSA students.

Chopra's difficulties with the clinical component of the MSA program continued into his second semester, and on October 21, 2003, Zivot and Rifici met with Chopra regarding his performance in the program. CWRU contends that they made Chopra aware of his unsatisfactory performance, gave him advice on how to improve his performance, and scheduled another meeting for the early part of the third semester to review his progress. At the end of his second semester, Chopra again ranked last in overall clinical performance.

As the Spring 2004 semester began, Chopra's difficulties extended into the academic

component of the MSA program. Zivot and Rifici met again with Chopra on January 27, 2004. At this meeting, Chopra claimed that his performance was improving, but Zivot and Rifici pointed out that 75% of Chopra's clinical evaluations were negative, and that complaints about his performance were not confined to one specific area, but were appearing "all over the board." Zivot and Rifici expressed their concern with Chopra's persistent inability to multi-task during surgical exercises and stated that, in their expert opinion, he was not going to improve in this fundamental area.

CWRU then gave Chopra the option of withdrawing from the program voluntarily, and receiving a full refund of his tuition for Spring semester 2004. Zivot and Rafici explained that if Chopra did not accept this option, he would be formally separated from the program without a refund. Chopra voluntarily withdrew from the MSA Program on January 29, 2004.

## II. Discussion

### A. Standard of Review

Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> [a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. Determination of whether an issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide whether the evidence is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B. 42 U.S.C. § 2000(d)**

Chopra claims that CWRU's acts and omissions during his time in the MSA program constitute unlawful discrimination in education, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d). Title VI states that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance."

*Id*.

The Sixth Circuit addressed the threshold requirements for maintenance of a private action under this statute in *Buchanan v. City of Bolivar*, 99 F.3d 1352 (6th Cir. 1996):

> To maintain a private right of action under 42 U.S.C. § 2000(d), [a] plaintiff must first prove the threshold requirement that the [allegedly discriminatory] program ... receives federal financial assistance ... Furthermore, to avoid summary judgment on a claim under § 2000(d), a plaintiff must create a genuine issue of material fact that the defendant intended to discriminate[.]

*Id.* at 1356 (citing *West Zion Highlands v. City of Zion*, 549 F. Supp. 673, 675 (N.D. Ill. 1982); *Guardians Ass'n v. City Service Comm'n*, 463 U.S. 582 (1983)).

Chopra's claim fails at the first stage of this inquiry. While CWRU has introduced evidence tending to demonstrate that the MSA program receives no federal financial assistance, and is instead funded entirely by student tuition, Chopra has neither alleged nor provided any evidence to the contrary. The court therefore finds that CWRU has carried its burden to demonstrate the absence of any genuine issue of material fact regarding Chopra's Title VI claim. As Chopra has not carried his corresponding burden, no reasonable fact-finder could find that the MSA program receives federal financial assistance, and summary judgment in favor of CWRU is appropriate on this claim.

**C. 42 U.S.C. § 1983/Equal Protection**

Chopra also claims that his treatment by CWRU and its officials constitutes interference with his right to equal protection under the law, as guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a private right of action for redress of certain constitutional infringements.

> When Congress enacted § 1983 as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred under color of state law; thus, liability attaches only to those wrongdoers who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.

*Nat'l Collegiate Athletic Assoc. v. Tarkanian*, 488 U.S. 179, 191 (1988)(quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). When a private party has taken the decisive step in causing harm to a plaintiff, courts may inquire further into state involvement in the matter, in order to determine whether the decisive conduct may be fairly characterized as state action. *Id*. at 192.

The Supreme Court has articulated definitions for at least three discrete scenarios under which such characterization would be appropriate. 42 U.S.C. § 1983. *See, e.g., Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)(summarizing the three tests composing this "principal inquiry"). Under the "public function test," a plaintiff may demonstrate state action by showing that a private entity exercises powers which are traditionally reserved to the state, such as holding elections or acquiring property through eminent domain. *See Flagg Bros., et al. v. Brooks*, 436 U.S. 149, 157 (1978); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). The "state compulsion test" requires that a state exercise its coercive power or provide significant encouragement to a private actor, such that any choice made by the private actor is deemed to be that of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir. 1983). Finally, the "symbiotic relationship" or "nexus test" requires demonstration of a sufficiently close nexus between the state and the challenged action of the regulated entity. *See Jackson* at 351; *Burton v. Wilmington Parking Auth*, 365 U.S. 715, 721-26 (1961).

Chopra has failed to demonstrate the existence of a genuine issue of material fact under any of these tests. The state has not been the traditional steward of supervisory powers over enrollment

in, and separation from, privately-funded academic programs. Nor does Chopra advance any allegations or evidence supporting a theory that the state exerted any coercive power, or any significant encouragement, prior to CWRU's decision to terminate Chopra from the MSA program. As the court found *supra*, Chopra has failed to argue that the MSA program is even connected to federal educational funding. His constitutional claim must therefore fail under each of the public function, state compulsion, and symbiotic relationship tests.

Since liability under 42 U.S.C. § 1983 attaches only to state actors, and since Chopra has not carried his burden to demonstrate the existence of any genuine issue of material fact regarding state involvement in his tenure with CWRU, summary judgment is also appropriate on this count.

**D. 42 U.S.C. § 1981**

Finally, Chopra claims that CWRU's conduct in dismissing him from the MSA program constitutes unlawful discrimination on the basis of natural origin and age, in violation of 42 U.S.C. § 1981.

Title 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In *Saint Francis College et al. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) the Supreme Court held that discrimination based on birthplace alone is insufficient to state a claim under § 1981. The Court instead noted that the plaintiff could advance his claim under § 1981 by demonstrating that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin. *See id.* Chopra, by contrast, claims that CWRU and its

agents discriminated against him based solely on his "national origin." (He refers to himself obliquely as "non-American.") Nowhere does Chopra claim that the alleged discrimination he suffered was actually based on his race, as required by the holding of *Saint Francis College*.

The Supreme Court has also stated that, on its face, § 1981 relates primarily to racial discrimination in the making and enforcement of contracts. *Johnson v. Railway Express Agency, Inc*., et al., 421 U.S. 454, 459 (1975). Chopra has cited, and the court could locate, no case law supporting the existence of a cause of action for age discrimination under § 1981. Nor is there any indication in the language of the statute that § 1981 was intended to reach claims based on age discrimination.

Chopra's claim for violation of 42 U.S.C.S. § 1981 based on age and national origin therefore fails, and summary judgment will be granted to all defendants.

**E. Fraudulent Misrepresentation**

Having determined that summary judgment is proper on Chopra's federal claims, the court declines to exercise jurisdiction over his purely state-law claim for "fraudulent misrepresentation." *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620 (6th Cir., 1999)("district courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims")(citing *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)).

## III. Conclusion

For the foregoing reasons, the court finds that no genuine issue of material fact remains on any of Chopra's claims. The court therefore grants the motion for summary judgment, and enters judgment in favor of all defendants.

This order is final and appealable.

IT IS SO ORDERED.

                                                                s/Ann Aldrich  
                                                                ANN ALDRICH  
                                                                UNITED STATES DISTRICT JUDGE

Dated: March 1, 2006